*Radcliff, J.
By the act of the 22d of February, 1788, in order “ to prevent the further importation of slaves into this state,” it is enacted, that if any person shall sell as a slave within this state any negro or other person who has been imported or brought into this state after the 1st June, 1785, he shall be deemed guilty of a public of-fence, and forfeit 100Ü. and the person so imported or brought into this state shall be free.
1. The first question is, whether the slave was brought into this state within the meaning of the act.
2. Whether the letting to hire, as above stated, was a sale within the act.
With respect to the first question, although the preamble of the act seems to apply to the case of foreign importation only, yet by the enacting clause it manifestly extends to all classes of slaves in any way brought into this state. Here the slave eloped from his master. He certainly could not be said to be brought into this state, if the master, instead of reclaiming him, had not sanctioned his coming by the subsequent disposition of him to the defendant. He thereby made the change of the residence of the slave his own act, and the slave, by the consent of his master, became domiciiated here. This is the same, in effect, as bringing him, in *90 the first instance, and I think equally within the mischief contemplated by the legislature. If we should adopt a different construction, it would be easy for masters, having the absolute control of slaves, to evade the prohibition, by suffering, or tempting them to escape into this state, and thus, by a new mode, introduce a fraudulent traffic, contrary to the intent of the act. The act, it is true, is highly penal, and ought, therefore, when it operates upon the offender, to be construed strictly ; but it is also in favor of personal liberty, and to this end, when it operates upon the offence only, ought to be liberally expounded.
2. I think the letting of the slave to the defendant was a sale, designed to be in evasion of the act. It has all the characters of a sale, instead of a letting for hire. The consideration is equivalent to the ordinary value of a slave. *It is a sum in gross, without any annual or other periodical reservation or payment, for services to be performed, and without any deduction, in case of the death or disability of the slave. The term of service is 20 years, by a slave advanced to the age of 25, a period beyond the ordinary calculation of such a life, and the power granted over the slave is absolute and irrevocable. All these circumstances plainly indicate that the intent was to cover- a sale, in evasion of the act.
I am, therefore, of opinion, on both points, that the plaim tiff is entitled to judgment.
Kent, J.
I am also of opinion that the case of a slave running away from his master into this state, and followed by the act of the master here in selling him within the state, is to be considered as a constructive bringing into the slate, within the purview of the act. The subsequent sale by the master gives a sanction to the act of the slave, and may be deemed evidence of his assent. We may consider the act as intending to prevent not only a traffic in slaves, but the increase of them from abroad; and without adopting this construction, the act may, with great ease, be eluded.
On the second question, it is a little difficult to draw the precise limit between a lawful hiring of a slave so imported, *91 and a sale. But I think the judgment of law, upon the agreement stated in the verdict, must be, that it is a sale within the act. It is for a sum in gross, equivalent nearly to the ordinary value of a slave, and for a term of years, equal to the value of his life. An absolute authority is also transferred over the person of the slave, and no annual or periodical render is reserved, which is the usual incident of a letting to hire.
I am of opinion that judgment ought to be given for th'e plaintiff.
Lansing, Ch. J. was of the same opinion.