ADAMS-FLANIGAN COMPANY, for Itself and on Behalf of All Creditors Who May Desire to Intervene against the Purchasers and on Behalf of All Creditors Similarly Situated, Appellant, *v.* FRANCESCO DI DONATO and ANTONETTE BASELICE, Defendants, Impleaded with ANIELLO BASELICE, Respondent.

First Department, December 7, 1917.

**Personal Property Law, section 44, relating to transfers of goods in bulk, construed — creditor entitled to protection of statute — effect of payment after transfer — contingent liabilities not within protection of statute.**

Contingent liabilities are not within the protection of section 44 of the Personal Property Law, known as the Bulk Sales Act, relating to the transfer of goods in bulk. Such transfers, made in violation of the statute, are only void against creditors existing at the time thereof.

The right of a creditor to maintain an action under said provision of the Personal Property Law ceases when he subsequently accepts payment of all indebtedness, matured, fixed and ascertainable at the time of the transfer complained of. The right is not revived merely because after the transfer attacked, an additional debt has accrued in favor of the creditor.

Hence, since an accommodation indorser of a series of negotiable promissory notes is only contingently liable thereon, the holder of said notes who has accepted payment of all the notes due at the time of a transfer by the indorser of goods in bulk in violation of the statute is not a creditor entitled to the protection of the statute.

CLARKE, P. J., and PAGE, J., dissented, with opinion.

APPEAL by the plaintiff, Adams-Flanigan Company, for itself and on behalf of other creditors, from a judgment of the Supreme Court in favor of the respondent, entered in the office of the clerk of the county of Bronx on the 19th day of February, 1917, dismissing the complaint on the merits as to the respondent upon the decision of the court after a trial at the Bronx Special Term.

*J. Philip Van Kirk,* for the appellant.

*William Greenthal,* for the respondent.

SHEARN, J.:

This action was brought under the Bulk Sales Act, chapter 507 of the Laws of 1914 (amdg. Pers. Prop. Law [Consol. Laws, chap. 41; Laws of 1909, chap. 45], § 44). The complaint was dismissed on the merits. The facts, all of which are stipulated, are briefly as follows: About April 9, 1915, one Sirico made eighteen promissory notes payable to his own order and indorsed the notes. These notes were thereupon indorsed by defendant Baselice for the accommodation of Sirico and were thereafter delivered to the plaintiff, in payment for property sold and delivered to Sirico by the plaintiff. The notes were each for $40, and those maturing June 1, July 9 and August 9, 1915, were paid by the indorser Baselice on or about their due dates. The notes maturing respectively June 9 and September 9, 1915, were not paid, but were protested and went to judgment. On September 9, 1915, Baselice sold out his business without complying with the provisions of the Bulk Sales Act. Thereafter two other notes became due, on October 11 and November 9, 1915, went to protest, and judgment was entered on November 23, 1915. On the very day that judgment was obtained on the notes of October 11 and November 9, to wit, on November 23, 1915, Baselice paid the judgment obtained on the two notes maturing June 9 and September 9, and also paid the note maturing October 11, 1915, which last note was included in the judgment recovered on November 23, 1915. Thus, on November 23, 1915, when the payment was made, Baselice was still indebted to the plaintiff on one note, the one that matured November 9, 1915. The judgment entered November 23, 1915, is still unsatisfied.

The remaining notes falling due monthly between December 9, 1915, and October 9, 1916, were not paid. This action was begun in July, 1916.

The parties submitted to the Special Term as the question for decision: Was the plaintiff, after November 23, 1915, a creditor of Baselice within the meaning of the Bulk Sales Act? The question arises because of the payment by Baselice on November 23, 1915, of all indebtedness that had matured up to September 9, 1915, the date of the transfer attacked. Under the recent decision of this court in *Apex Leasing Co., Inc., v. Litke* (173 App. Div. 323) the plaintiff was not after November 23, 1915, a creditor within the meaning of the Bulk Sales Act, for the purpose of subsequently maintaining an action to set aside the bill of sale, because the matured indebtedness existing on September 9, 1915, was satisfied by the payment of November 23, 1915. The appellant contends, however, that on September 9, 1915, the liability of Baselice upon the entire series of notes indorsed by him for the accommodation of Sirico was absolute, and no part of it contingent and that, therefore, the plaintiff was a creditor on September 9, 1915, and at all times thereafter down to the commencement of this action. This contention is unfounded. While it has been held that an accommodation indorser of a non-negotible instrument is liable as a co-maker and not entitled to notice of protest, in the case of negotiable paper he is liable as indorser. His contract with a *bona fide* holder is that on due presentment the note will be paid according to its tenor, and that if it be dishonored and the necessary proceedings on dishonor be duly taken he will pay the amount thereof to the holder. (Neg. Inst. Law [Consol. Laws, chap. 38; Laws of 1909, chap. 43], §§ 113, 116; *Blanchard* v. *Blanchard*, 201 N. Y. 134, 137, 138.) It is between the maker and indorser that the relation of suretyship exists. A liability with an " if " in it is contingent. The contingency in the case of an accommodation indorser of negotiable paper is the dishonoring of the note and notice of protest. It was held in *Apex Leasing Co., Inc.,* v. *Litke* (*supra*), following *Matter of Hevenor* (144 N. Y. 271), that contingent liabilities were not within the protection of the Bulk Sales Act. Accordingly, as the only debt of Baselice fixed and

capable of being definitely ascertained at the time of the transfer, was satisfied before suit, and as the transfer was only void against creditors existing at the time of the transfer, no cause of action was made out.

Nevertheless, because on the day when the matured indebtedness was satisfied, *i. e.*, on November 23, 1915, Baselice was then indebted to the plaintiff on the note maturing November 9, 1915, included in the judgment entered on November 23, 1915, it is urged that the plaintiff at all times down to the commencement of the action continued to be a creditor and that the action may be maintained. This is based upon the argument that the payment of the debt that had matured at the time of the transfer is effective to defeat an action brought under the statute solely because the debtor has by the payment purged himself of fraud. It is then argued that the debtor could not in equity purge himself of the fraud without paying all that he owed at the time the payment was made. But this is not the ground upon which it is held that payment of the debt existing at the time of the transfer defeats an action brought under the statute. The ground is that the payment satisfied the debt, and, therefore, the party to whom the payment was made cannot be said to be a creditor, the creditor's status always relating back to the time of the transfer. The right of the creditor to maintain an action under the statute ceases when he accepts payment of all indebtedness matured, fixed and ascertainable at the time of the transaction complained of. The right is not revived merely because, after the transfer attacked, an additional debt has accrued in favor of the creditor, any more than would be the case if the creditor, whose claims existing at the time of the transfer were thereafter satisfied, acquired the status of a creditor by becoming the assignee of a claim due some third person, which claim matured subsequent to the transfer sought to be set aside. If, as might well be the case, it should be deemed desirable to give a right of action to one holding a series of obligations, some of which matured previous to the transfer and others subsequent thereto, the remedy should be given by legislation and not by construction. Especially should this be so in dealing with a statute which, as was held by this court in

*Apex Leasing Co., Inc.,* v. *Litke* (*supra*), is in derogation of the common law and must be strictly construed.

The judgment should be affirmed, with costs.

LAUGHLIN and DOWLING, JJ., concurred; CLARKE, P. J., and PAGE, J., dissented.

PAGE, J. (dissenting):

The facts are fully stated in the opinion of Mr. Justice SHEARN, except for the omission of the somewhat significant fact that the sale in bulk was made to the wife and son-in-law of the defendant Aniello Baselice.

The Bulk Sales Law (Laws of 1914, chap. 507, amdg. Pers. Prop. Law [Consol. Laws, chap. 41; Laws of 1909, chap. 45], § 44) provides, so far as material to the instant case, that the sale in bulk of a stock of merchandise, not made in the usual course of business, shall be void unless five days before the sale the purchaser shall demand and procure a verified list of the creditors of the seller, containing their addresses and the amount due each, and unless the purchaser shall, at least five days before taking possession of or paying for such merchandise, notify personally or by registered mail every creditor whose name and address are stated in the list of the proposed sale, and of the price, terms and conditions thereof. The statute further provides the remedy for its violation that was pursued in this case.

In so far as this statute takes away the free and unrestricted right that a man has to sell and dispose of his own property, it is in derogation of the common law and must be strictly construed. Therefore, when we consider whether the prohibition of the statute applies, it must appear that there is a creditor who had a valid debt for a certain amount then due; a contingent liability of the seller is not sufficient. (*Apex Leasing Co., Inc.,* v. *Litke,* 173 App. Div. 323, 326.) In the case at bar Aniello Baselice, on the date of the sale, was directly liable to the plaintiff on two of the series of notes that had fallen due and been protested for non-payment prior thereto, and contingently liable as an irregular indorser on the other outstanding notes. (Neg. Inst. Law [Consol. Laws, chap. 38; Laws of 1909, chap. 43], § 114.) Inasmuch as it is admitted that Baselice had paid all the notes that

had fallen due prior to that time, the contingency would seem to be rather one of time than event. There was then a creditor of Baselice, within the letter of the statute, at the time of the sale, and concededly none of the requirements of the statute were complied with. The sale was, therefore, void as to the plaintiff.

The remaining question is, Did the payment of the judgment recovered on these two notes relieve the defendants from liability to account to. the plaintiff for the property so sold? In this phase of the case we are dealing with the remedial portion of the statute. Did this payment validate the sale and defeat the remedy of the plaintiff? In my opinion it did not. Although, as has been above stated, the statute is to be strictly construed in so far as it impairs the right of the defendants, yet in so far as it is remedial it is to be liberally construed in the interest of the plaintiff so as to give effect to the intention of the Legislature. (*Fish* v. *Fisher,* 2 Johns. Cas. 89, 90; *Smith* v. *Moffat,* 1 Barb. 65, 67.) " In the interpretation of statutes, the great principle which is to control is the intention of the Legislature in passing the same, which intention is to be ascertained from the cause or necessity of making the statute, as well as other circumstances." (*People ex rel. Wood* v. *Lacombe,* 99 N. Y. 43, 49.) "The statute must be construed with reference to the objects it had in view, the evils intended to be remedied and the benefits expected to be derived from it." (*Republic of Honduras* v. *Soto,* 112 N. Y. 310, 312.) As Chancellor KENT has stated, it is the duty of judges "to make such a construction as should repress the mischief and advance the remedy." (Kent Com. 464.) The mischief that the Bulk Sales Law was intended to suppress was the sale, by persons who were pecuniarily involved, of the entire or a substantial portion of their stock of merchandise without notice to their creditors, so that the latter could take such steps as might be necessary for their protection. Such sales had been made through auctioneers or to members of the seller's family. The instant case is typical of those within the contemplation of the Legislature. Aniello Baselice, as accommodation indorser on a series of notes, had been compelled to pay all that had fallen due, that had been paid. He was indebted for some

First Department, December, 1917.          [Vol. 180.

that had become due, which had not been paid. And there was a substantial amount yet to become due, but which with reasonable certainty he would be called upon to meet. To escape the liability of having his goods appropriated to the payment of these obligations, he transferred his business, merchandise and fixtures to his wife and son-in-law. The plaintiff, being at that time a creditor, was entitled to notice of the contemplated sale and, had it been given, the plaintiff could have taken such steps as would protect itself not alone with respect to the debts actually due, but as to those to become due. To allow a person to defeat the purpose of the statute by subsequently paying such portion of his then indebtedness as had matured prior to the sale would to my mind tend to suppress the remedy and advance the mischief. By giving the statute the liberal construction of its remedial portion that is required, we should hold that the sale was void as to the plaintiff, and that the property was held by the purchasers as a receiver for the plaintiff, and that they are accountable to the plaintiff therefor to the extent of the entire debt due and owing from the defendant Aniello Baselice to the plaintiff at the time of rendition of judgment herein.

The judgment should be reversed, with costs to the appellant, and judgment granted for the plaintiff in the form provided in the statute, with costs.

CLARKE, P. J., concurred.

Judgment affirmed, with costs.