ROYAL INDEMNITY COMPANY, Plaintiff, *v.* BENJAMIN GINSBERG and Others, Impleaded with BROOKLYN RADIO STORES CORPORATION, Defendants.

Municipal Court of New York, Borough of Manhattan, First District, December 18, 1935.

508

*Julius S. Smith*, for the plaintiff.

*Sol J. Shapiro,* for the defendants.

EDER, J.   Plaintiff is an insurance corporation.   It issued its workmen's compensation policy to Brooklyn Radio Service Corporation on May 1, 1931, which it claims was in effect until May 1, 1932.   On August 22, 1932, it rendered a bill for earned premium to said Brooklyn Radio Service Corporation in the sum of $260.89 and the same not being paid plaintiff sued the said named assured and recovered judgment against it on April 14, 1934, in the sum of $299.67.   Execution was duly issued upon said judgment and returned unsatisfied and said named judgment debtor was thereafter examined in proceedings supplementary to execution, and from the testimony adduced on said examination it is claimed by plaintiff that a cause of action has arisen against the defendants entitling it to recover under the provisions of section 15 of the Stock Corporation Law.

In June, 1932, Brooklyn Radio Service Corporation found itself in financial difficulty.   With the co-operation of Electrical Board of Trade, Bureau of Adjustments, Inc., directed toward that end,

the business of Brooklyn Radio Service Corporation was sold to Brooklyn Radio Stores Corporation, defendant in this action. This was a bulk sale and to comply with the requirements of section 44 of the Personal Property Law notice of the proposed sale was sent by registered mail to the listed creditors of Brooklyn Radio Service Corporation on June 28, 1932, notifying them that the sale would take place on July 5, 1932, stating the price, terms and conditions thereof, and the day, hour and place of sale. On the mentioned day such sale was consummated; Brooklyn Radio Stores Corporation purchased the business, paid the consideration and received a bill of sale which was filed on said day in the register's office of Kings county.

The defendants Ginsberg, Scafford and Weber were officers, directors and stockholders of Brooklyn Radio Service Corporation. Brooklyn Radio Stores Corporation is a corporation separate and distinct from Brooklyn Radio Service Corporation, and at the time (July 5, 1932) had a then cash paid in capital stock issued and paid for amounting to $10,000. One David Friedland was and still is the sole stockholder thereof; none of the officers, directors and stockholders of Brooklyn Radio Service Corporation were or are or ever have been officers, directors or stockholders of Brooklyn Radio Stores Corporation. These facts are undenied. The consideration for the purchase was a sum computed to be equal to twenty-five per cent of the indebtedness of said Brooklyn Radio Service Corporation, which indebtedness aggregated approximately $85,000, and the purchaser was to pay, in addition, counsel and accountants' fees. The sale was had and the consideration paid and the creditors of Brooklyn Radio Service Corporation paid, with the exception of the plaintiff.

It is claimed by plaintiff, and not denied, that its name was not included in the list of creditors furnished to the proposed purchaser Brooklyn Radio Stores Corporation and hence it never received notice of the proposed sale and only first learned of it in August, 1934, at the examination in supplementary proceedings already alluded to.

Plaintiff seeks to fasten liability on all the defendants under section 15 of the Stock Corporation Law, though it also seems to advance the theory that there is a liability in that the bulk sale mentioned was void under section 44 of the Personal Property Law (commonly referred to as the Bulk Sales Act), and that it was violative, also, of sections 3, 4 and 5 of the Debtor and Creditor Law, and, therefore, illegal and void, and that as plaintiff's judgment remains unpaid it has been damaged in this sum for which recovery may be had under said section 15.

The defendants affected by this motion are Benjamin Ginsberg and Brooklyn Radio Stores Corporation and they contend that both on the facts and law plaintiff's motion cannot prevail.

It is first urged in opposition that this court has no jurisdiction of the action; that it is in reality a suit in equity to declare the mentioned sale invalid and that this court has no jurisdiction to grant equitable relief. The claim is without force as the action is brought under section 15 of the Stock Corporation Law and this court has jurisdiction of such an action; no equitable relief is sought but solely a money judgment. (*Trustees of Masonic Hall* v. *Fontana,* 99 Misc. 497, 500.)

It is next urged that the moving papers are deficient in that the affidavit in support of the motion is not that of " a party or of any other person having knowledge of the facts, setting forth such evidentiary facts as shall * * * establish the cause of action sufficiently to entitle plaintiff to judgment," as required by rule 113 of the Rules of Civil Practice.

There is a measure of merit in this claim, but it is not sufficiently strong to warrant denial of the motion on this ground. It is true that the moving affidavit is made by plaintiff's vice-president who states he has no personal knowledge; that he bases his allegations upon reports rendered to him by the attorney for the plaintiff and employees of the plaintiff working under his supervision, and that the affidavits of said attorney and employees have not been submitted. But he also avers that his information and knowledge come from the testimony of the defendant Ginsberg given in the supplementary proceedings examination. This, coupled with the pleadings and other data annexed to the moving papers, indicates on his part sufficient knowledge of the facts as to bring him within the classification of a person " having knowledge of the facts," and this ground of objection is, accordingly, overruled.

Defendants next contend that plaintiff's status at the time of the sale on July 5, 1932, was merely that of one holding a " contingent claim " and that a contingent creditor has no standing to attack a sale or transfer as void under section 44 of the Personal Property Law; that this provision is applicable only to those creditors who had reduced their claims to judgment at the time of the sale; in other words, that one must have the status of a *judgment* creditor at the time of the sale in order to make such assault upon the transaction. (Citing *Hersch Corporation* v. *Goldberg,* 126 Misc. 857; *Adams-Flanigan Co.* v. *Di Donato,* 180 App. Div. 342; affd., 228 N. Y. 542.)

Reading section 44 of the Personal Property Law with article 10 of the Debtor and Creditor Law, I am of the opinion that they may be viewed as statutes *in pari materia* and being aimed at fraudulent conveyances and transfers generally, were intended for the benefit and protection of general creditors as well as judgment creditors and that any creditor of the seller may avail himself of these provisions. (See, also, *Willi* v. *Lyon*, 131 Misc. 73; *Ogdensburg Wholesale Mercantile Co., Inc.*, v. *Curry*, 148 id. 806; affd., 270 N. Y. Supp. 1018.) I am persuaded, therefore, that plaintiff has a status to maintain this action, if the essential facts exist.

We come, therefore, to a consideration of the merits.

Plaintiff relies largely on *Sterling National Bank & Trust Co. of New York* v. *Complex Dresses, Inc.* (240 App. Div. 57); *Lubinsky* v. *Hoffman* (158 Misc. 261), and *Lawrence Leather Co.* v. *Milgrom* (151 id. 609), and urges that the facts in these cases parallel those in the instant case and are decisive of this controversy. I do not think so for the reasons I shall presently point out. I will consider, first, section 15 of the Stock Corporation Law, the pertinent portion of which reads as follows: " No corporation which shall have refused to pay any of its notes or other obligations, when due, * * * nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered * * * by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid * * *. Every person receiving by means of any such prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders or other trustees * * *. Every transfer or assignment or other act done in violation of the foregoing provisions of this section shall be void * * *. Every director or officer of a corporation who shall be concerned in the making of any conveyance, assignment, transfer or payment * * * when it is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over any of the other creditors of the corporation, or who shall violate or be concerned in violating any other provision of this section shall be personally liable to the creditors and stockholders of the corporation of which he shall be director or an officer to the full extent of any loss they may respectively sustain by such violation."

A right of action thereunder accrues, insolvency existing, or the imminence thereof, (1) if there has been a conveyance or transfer of any of the corporate property, directly or indirectly, to any of its officers, directors or stockholders, for the payment of any debt; (2) if there has been a conveyance, assignment or transfer of any of its property " with the intent of giving a preference " to any particular creditor over other creditors of the corporation. Such acts are rendered void and when they are done and such prohibited result ensues, every *officer* or *director* of the corporation participating in the proscribed act or who is concerned therein is made " personally liable to the creditors " and stockholders " of the corporation " of which he was a *director* or *officer*, to the full extent of any loss they may respectively sustain by such violation.

Plaintiff in its brief succinctly states its position as follows: " The plaintiff herein is proceeding under Section 15 of the Stock Corporation Law to hold the defendants personally liable for their illegal acts."

It would appear, therefore, that whatever remedies plaintiff may have against *all* the defendants under section 44 of the Personal Property Law and article 10 of the Debtor and Creditor Law, it has elected to proceed against all the defendants under section 15 of the Stock Corporation Law.

*Sterling National Bank & Trust Co. of New York* v. *Complex Dresses, Inc. (supra)* involved section 44 of the Personal Property Law and was a suit in equity to void the sale as being fraudulent and not *bona fide;* a committee of creditors took charge and a sale was made by Co-Ed Dressmakers, Inc., the insolvent debtor; there was no actual sale of the assets; the transfer was in fact fraudulent and the money and valuable tradename found their way back into the hands of the insolvent's nominees. The entire transaction was polluted with these vices and was immersed in fraud. It was mottled throughout with bad faith. No such proof has been adduced here. As previously stated, neither the Brooklyn Radio Service Corporation nor any of its officers, directors or stockholders ever had or now have any interest whatever in Brooklyn Radio Stores Corporation, the purchaser, all of its stock being then owned and still owned by David Friedland as sole stockholder. Nor are they officers or directors thereof, nor have they ever been. Nor has plaintiff produced any proof that any of the purchase consideration or the tradename found its way back to the said named debtor, its officers, directors or stockholders, or to any of the defendants. Moreover, there was an actual *bona fide* sale and the provisions of the statute were adhered to.

*Lubinsky* v. *Hoffman* (*supra*) also dealt with the Bulk Sales Act and the Debtor and Creditor Law. There the debtors began to proceed under the Debtor and Creditor Law by attempting to make a general assignment for the benefit of creditors, and realizing that it had not been properly executed attempted to overcome it by executing a common-law deed of trust. As all of the creditors did not join it was ineffective (See Browne on Bankruptcy Law and Procedure, chap. XXV, § 124), and the attempted bulk sale was invalid. Here there was neither a general assignment for the benefit of creditors executed nor a common-law deed of trust. There was an actual *bona fide* sale, the provisions of the Bulk Sales Act being followed.

In *Lawrence Leather Co.* v. *Milgrom* (*supra*) the individual defendants, who were its officers and in control of its affairs, undertook the liquidation of the company without following the provisions of the statute and gave no notice to creditors. Here the statute was followed and notice was given to creditors, excepting the plaintiff. The proceeds of the sale were paid to the creditors of Brooklyn Radio Service Corporation with the exception of the plaintiff.

There is no similarity in point of facts, or parallel, with respect to these cases and the situation presented in the case at bar.

The omission to include the plaintiff's name in the list of creditors furnished by the seller to the purchaser, Brooklyn Radio Stores Corporation, did not thereby endow the plaintiff with a cause of action against Brooklyn Radio Stores Corporation. Section 15 of the Stock Corporation Law, as I view it, relates exclusively to and fastens a *personal liability* on the *officers* or *directors* of an insolvent corporation, or where insolvency is imminent, who participate in or are concerned with the prohibited disposal of its property and in no way relates to or fastens a personal liability on the recipients of the transfer, and whatever liability may be fastened upon such recipients or transferees by other statutes or recognized judicial fiat, it seems clear to me that none is saddled upon them by this particular section under which plaintiff sues, where such recipient or transferee is not an officer or director of such corporation. I am unable to see that the defendant Brooklyn Radio Stores Corporation can be held liable under it.

In order to fasten liability under section 15 of the Stock Corporation Law on an officer or director of an insolvent corporation, or where its insolvency is imminent, it must appear that it was his intention, by participating in the prohibited act, to give a preference to a particular creditor of the corporation over its other creditors. Brooklyn Radio Stores Corporation was not a *creditor* of Brooklyn Radio Service Corporation; it was a *bona fide purchaser* for value,

without notice; such *sale* gave it no *preference* as a *creditor;* it acquired a good and absolute *title by purchase.* So that even if plaintiff secured no part of the purchase consideration it does not affect the purchaser at all, at least, not under this particular statute under which plaintiff seeks to hold it liable. As section 15 declares that no conveyance, assignment or transfer of the property of an insolvent corporation, with intent to give a preference, shall be valid, " except as to any rights or interests which may be acquired thereunder by any person without notice or reasonable cause to believe that such conveyance, assignment, transfer, payment * * * would effect a preference," therefore, no such conveyance, assignment or transfer shall be void in the hands of a purchaser for a valuable consideration without notice.

The question then is, What is the status of the defendant Ginsberg as a result of the transaction? He, admittedly, was an officer, director and stockholder of Brooklyn Radio Service Corporation. It was his duty to include the plaintiff's name in the list of creditors furnished the proposed buyer, so that plaintiff would thus be enabled to share in the distribution of the purchase consideration. He assigns as his reason for failure of such inclusion that plaintiff was not listed on the books of Brooklyn Radio Service Corporation as a creditor at that time because it was then not such in fact, but, at most, was, at that time, merely holding a contingent claim, and that under section 44 of the Personal Property Law, according to his view of it, no notice was required to be given to contingent creditors; that the corporation had paid plaintiff the estimated earned premium and that it had no claim whatever against it at the time; that its claim only matured quite some time later, finally resulting in a judgment on April 14, 1934.

The legal effect of the judgment is this, that it has established conclusively that plaintiff was a creditor of the corporation at the time, and for the purpose of ascertaining and determining its status as such the judgment must be deemed to revert back to that time; the status thus exists as of that date regardless of the date the judgment is entered.

It seems apparent to me that the plaintiff was none the less a creditor of Brooklyn Radio Service Corporation, for the reasons hitherto stated, and its name should have been included in the list of creditors furnished to the proposed purchaser. By the omission to so include it it was deprived of participating in the distribution of the purchase consideration; by such omission, regardless of what reason prompted it, it resulted in the particularly listed creditors of the insolvent corporation being given a preference over the plaintiff, and I think that the defendant Ginsberg is, therefore

personally liable to the plaintiff as such officer and director under section 15 of the Stock Corporation Law for the amount of the judgment recovered by it against Brooklyn Radio Service Corporation, to wit, $299.67. Even if the defendant Ginsberg was motivated by good faith in omitting plaintiff's name from the list of creditors furnished to the proposed purchaser, for the reason given by him, the result none the less is that by his act plaintiff was deprived of sharing in the purchase consideration and the particularly listed creditors received a preference over the plaintiff in that respect. There was not, in consequence, an equal distribution of the corporate assets among all the creditors, which is the aim and design of the statute. By such act in omitting to so list the plaintiff as a creditor the defendant Ginsberg knew and must have known that plaintiff would thus be prevented from sharing with the particularly listed creditors and such intent to prevent plaintiff from doing so and to thus give a preference to the particularly listed creditors over the plaintiff must be inferred from this conduct and imputed to him. (*Shepard Co.* v. *Taylor Pub. Co.*, 180 N. Y. Supp. 122; *Karasik* v. *People's Trust Co.*, 252 Fed. 324; affd., Id. 337.) This preference consisted, not in the transfer of the corporate property to the purchaser, who was not a creditor, but in the disposal of the purchase consideration among the particularly listed creditors, excluding the plaintiff; and this disposal made while the corporation was insolvent.

Motion for summary judgment granted in favor of plaintiff and against defendant Benjamin Ginsberg and judgment awarded in favor of plaintiff and against said defendant Benjamin Ginsberg for the sum of $299.67. Motion for summary judgment denied as against defendant Brooklyn Radio Stores Corporation, and complaint dismissed as to defendant Brooklyn Radio Stores Corporation.