### In re WELLS, Bankrupt.

*(District Court, W. D. Pennsylvania.   October 15, 1880.)*

1. W., a glass manufacturer, filed a petition in bankruptcy, but before adjudication made a composition agreeing to pay 50 per centum of his debts in instalments, evidenced by his promissory notes, the first payable in six months.   He resumed his business, and employed P. as an operative.   Failing to pay the first instalment of his composition it was set aside, and he was adjudged a bankrupt.   While the composition was in force he sold glass, which was in stock when he filed his petition, and manufactured other glass, part of which was on hand when the composition was set aside, and was taken possession of and converted into money by the assignee.   *Held*, that out of the assets in the assignee's hands P. was entitled to be paid his wages, $19.95, earned while the composition was in force.

In Bankruptcy.   *Sur* claim of Thomas Pomeroy.

*John M. Kennedy*, for assignee.

*Thomas C. Lazear*, for Pomeroy.

ACHESON, D. J.    Thomas Pomeroy claims to be paid in full, out of the estate of the bankrupt, $19.95, being a balance due him for wages of labor.    There are a number of claims in all respects similar; and, as the determination of one will practically dispose of all, the case deserves careful consideration.    The facts are as follows:

George W. Wells filed a petition for his adjudication as a bankrupt on February 22, 1878, but, before anything further was done in the case, submitted to his creditors a proposition for a composition, viz.: to pay them 50 per cent. of their claims in instalments, to be evidenced by his promissory notes, the first payable in six months after the recording of the resolution accepting the proposition.    The creditors, at a meeting held April 8, 1878, accepted the proposition, and the composition was confirmed by the court on August 3, 1878. Wells was a glass-manufacturer, his assets consisting principally of his glass-works and stock in trade.    After his composition was confirmed, he resumed his business as a glass manufacturer, and employed Thomas Pomeroy as an operative.    Wells made default in paying the first instalment of his composition; and thereupon, on the petition of himself and the larger part of his creditors, the court set aside the composition, and the proceedings in bankruptcy were resumed by an order in the terms following, to-wit: "Composition set aside and bankruptcy resumed, saving all rights attached meantime."

During the time the composition was in force Wells sold glass which he had in stock when his original petition was filed, and manufactured other glass, some of which was on hand when the composition was set aside; but at that time the stock on hand was less in quantity than when the original petition was filed.    The wages of Thomas Pomeroy, in question, were earned at the glass-works while the composition was in force.    Wells was adjudged a bankrupt on August 22, 1879.    His assignee took possession of, and converted into money, the bankrupt's stock of glass, etc., on hand when the

composition was set aside. Out of the proceeds of the stock Thomas Pomeroy claims to be paid his wages. To the regis-ter's report against the allowance of the claim, Pomeroy has filed exceptions. The register makes a very strong, and per-haps unanswerable, argument to show that as the claim did not exist at the time the petition in bankruptcy was filed, it is not provable as an ordinary debt against the estate of the bankrupt. But if this be so, there is only the stronger reason for giving the claim a preference; otherwise a most meritori-ous claimant will receive nothing out of the bankrupt's estate. The register concedes the hardship of rejecting the claim *in toto,* but he was unable to see any way for the relief of the claimant, especially in view of the decision in *In re Bright-man,* 18 B. R. 566. But that case, I think, is readily dis-tinguishable from the present one. There the claim was for the price of goods sold to the bankrupts while they were doing business during the continuance of a composition which was afterwards set aside. These new goods had been disposed of by the bankrupts, and there was nothing to show for them. The vendors, nevertheless, claimed to be paid *out of the bank-rupts' original assets,* in full and in preference to the old creditors. The point actually *decided was that they were not entitled to such preference.* Judge Lowell, in remarking upon the absence of the elements to constitute an estoppel against the old creditors, said: "*None of the assets were acquired in the new trade.*"

But here the labor of the claimant has gone into the assets of the bankrupt, and this with the implied consent of the general creditors. Shall they, then, keep the fruits of his labor without rendering any equivalent therefor? The cred-itors voluntarily left the assets in Wells' hands, and it must be presumed that they intended that he should operate his glass-works. Perhaps it would be going too far to say that they held him out as capable of contracting debts generally; but, to the extent of the wages of labor necessary to carry on his business, I think the creditors must be held to have given him a license to contract debts and charge the assets with the payment of such wages.

These wages are somewhat analogous to claims for expenditures incurred in preserving or taking care of the bankrupt's property before it comes into the hands of the assignee; and such expenditures will be allowed by the bankrupt court in the exercise of its equitable jurisdiction. *In re Grant*, 2 Story, 312; *In re Fortune*, 2 B. R. 662.

The saving clause to the order (which was made by the late Judge Ketcham) setting aside the composition, has, I think, some significance: "Composition set aside and bankruptcy resumed, *saving* all rights attached meantime." Now, I am not aware that it has been claimed that any "rights attached" to the bankrupt's assets while the composition was in force other than these labor claims; and, it seems to me, it is not a strained construction of this clause to hold that the deserving claims of Thomas Pomeroy and his fellow workmen are within its scope and intent.

The wages of labor are regarded by the law with especial favor. Hence, in the distribution of the estate of a bankrupt a partial preference is given to such debts by section 5101 of the United States Revised Statutes. The labor claim in question here in amount falls within the limit of the statutory preference; and, if not otherwise covered by the letter of the law, is within its spirit. But it is said that when the composition was set aside there remained of the assets less in quantity than when the original petition was filed. This claimant, however, is not responsible for that result. If Wells disposed of assets and failed to make due application of the proceeds, surely the claimant is not to blame. That was a risk the creditors voluntarily assumed when they left Wells in possession of the property.

And now, to-wit, October 15, 1880, the exceptions to the register's report are sustained, and it is ordered that the assignee pay in full the claim of Thomas Pomeroy for his aforesaid wages.