NITRO POWDER COMPANY, Appellant, *v.* AGENCY OF CANADIAN CAR AND FOUNDRY COMPANY, Respondent.

Contract — sale— provision in contract of sale that if government take over material seller not obliged to replace shortage — where government took material seller not liable to purchaser for difference between contract price and amount paid by government — when fact that seller sought or welcomed taking by government immaterial.

1. When people enter into a contract which is dependent for the possibility of its performance on the continual availability of a specific thing, and that availability comes to an. end by reason of ·circumstances beyond the control of the parties, the contract is *prima facie* regarded as dissolved. The contingency which has arisen is treated, in the absence of a contrary intention made plain, as being one about which no bargain at all was made. (*Tamplin Steamship Co.* v. *Anglo-Mexican Petroleum Products Co.*, [1916] 2 A. C. 397, 406, followed.)

2. Where a written contract whereby defendant agreed to sell to plaintiff a quantity of explosive contained a provision that should the quantity be reduced by " Government taking over the material * * * the seller will not be called upon to replace the shortage," and, after defendant had delivered one carload, the government of the United States by its order did take over the remaining portion, the taking by government completely frustrated the contract because it left no material upon which the contract could operate, and as soon as the material was taken defendant was released from all obligation to the p'aintiff. Plaintiff cannot, therefore, recover the difference between the conditional contract price and the government price.

3. The fact that the defendant sought or welcomed the taking by the government is immaterial where the case is destitute of the suggestion that after the contract in suit was made defendant went to the government and brought the material to its attention, or induced it to act where inaction was imminent, in order to deprive plaintiff of its prospective advantages.

*Nitro Powder Co.* v. *Agency of Canadian Car & Foundry Co.*, 192 App. Div. 908, affirmed.

(Argued March 22, 1922; decided April 25, 1922.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department,

entered June 1, 1920, affirming a judgment in favor of defendant entered upon a verdict directed by the court.

*Walter H. Pollak, Osmond K. Fraenkel* and *Louis Werner* for appellant.    The express contract of the parties gives defendant no excuse.    It affords a defense against causes " beyond the control of the seller " and no others. A taking which respondent induces is not a cause beyond its control.    The parties' express *force majeure* stipulation excludes the implication of the ordinary implied *force majeure* condition.    (*Schwier* v. *N. Y. C. R. R. Co.*, 90 N. Y. 558; *Bleeker* v. *Johnston*, 69 N. Y. 309; *Met. Water Board* v. *Dick, Kerr & Co.*, [1918] A. C. 119; *Blackburne, Bobbin & Co.* v. *Allen*, [1918] K. B. D. 540; *Wolfe* v. *Howes*, 20 N. Y. 196; *Dexter* v. *Norton*, 47 N. Y. 62; *Stewart* v. *Stone*, 127 N. Y. 500; *Buffalo, etc., Land Co.* v. *Bellevue, etc., Co.*, 165 N. Y. 247; *Dolan* v. *Rodgers*, 149 N. Y. 489; *Kronprinzessin Cecilie*, 244 U. S. 12; *Horlock* v. *Beale*, [1916] 1 A. C. 486; *Pollard* v. *Schaeffer*, 1 Dal. 210; *Baily* v. *deCrespigny*, L. R. 4 Q. B. 180.) The defense of *force majeure* as an implied condition of the covenant gives defendant no excuse; it is, on grounds already stated, inapplicable where the parties have themselves made their stipulation covering the very matter. But, if applicable, it could not avail defendant.    For the law never raises an implication against defendant's own acts.    A result that defendant accomplishes or aids in accomplishing is not *force majeure*.    (*Dexter* v. *Norton*, 17 N. Y. 62; *Dolan* v. *Rodgers*, 149 N. Y. 489; *B., etc., Land Co.* v. *B. L. Co.*, 165 N. Y. 247; *Lorillard* v. *Clyde*, 142 N. Y. 456; *C. H. Realty Co.* v. *City of Albany*, 207 N. Y. 377; *Dermott* v. *Jones*, 2 Wall. 1; *Beebe* v. *Johnson*, 19 Wend. 500; *Baker* v. *Johnson*, 42 N. Y. 126; *Tompkins* v. *Dudley*, 25 N. Y. 272; *Columbus R. & P. Co.* v. *Columbus*, 249 U. S. 399.)    The defendant must account to the plaintiff for any profits received from the taking of the goods.    *Force majeure* stipulations, express or

implied, are designed as a defense to the obligor, a protection against a loss he cannot avoid. Their purpose is not to afford him a profit. (*Tenants* v. *Wilson*, [1917] A. C. 495; *Blacklock* v. *Macarthur*, [1919] S. C. 57; *Peckham* v. *Industrial Securities Co.*, 113 Atl. Rep. 799; *Alaska Coast Co.* v. *Alaska Barge Co.*, 79 Wash. 216; *Crown Emb. Works* v. *Gordon*, 190 App. Div. 479; *Krulewitch* v. *Nat. Importing Co.*, 195 App. Div. 544; *Dexter* v. *Norton*, 47 N. Y. 62; *M. L. Ins. Co.* v. *Buck*, 93 U. S. 24; *Jones* v. *Judd*, 4 N. Y. 412; *Clark* v. *Gilbert*, 26 N. Y. 279; *McKeefrey* v. *Connellsville C. & I. Co.*, 56 Fed. Rep. 212.)

*Eli J. Blair* and *George W. Field* for respondent. The express contract of the parties released the defendant from the terms of plaintiff's contract. (*The Kronprinzessen Cecilie*, 244 U. S. 12; *The Frankmere*, 262 Fed. Rep. 819.) In the absence of any reservation and even assuming the defendant induced the sale, it is relieved from the obligation of plaintiff's contract. (*Mawhinney* v. *Millbrook Woolen Mills*, 231 N. Y. 290; *Roxford Knitting Co.* v. *Moore & Tierney, Inc.*, 265 Fed. Rep. 177; 253 U. S. 498; *D., L. & W. R. R. Co.* v. *Nuhs Co.*, 111 Atl. Rep. 223; *Sturm* v. *Boker*, 150 U. S. 312; *Sturtevant Co.* v. *Fireproof Film Co.*, 216 N. Y. 199; *Deniville Co.* v. *Leonard Keil, Inc.*, 140 N. Y. Supp. 150; *Summers* v. *Hibbard*, 153 Ill. 102; *Matter of Shipton, Anderson & Co.*, [1915] 3 K. B. 676; *Dickerson* v. *Armstrong*, 94 Fed. Rep. 864; *Peck* v. *Connor*, 47 N. W. Rep. 977; *Butler Hard Rubber Co.* v. *Toube*, 38 Civ. Pr. Rep. 23; *Stuyvesant* v. *Weil*, 167 N. Y. 421; *Holman* v. *Goslin*, 63 App. Div. 204.) The defendant was relieved from the obligation of the contract sued upon by any taking over by the government of the TNT, regardless of its form. (*Uvalde Asphalt Paving Co.* v. *City of New York*, 149 App. Div. 491; *Cherrington* v. *Burchell*, 147 App. Div. 16; *Fleischman* v. *Ferguson*, 223 N. Y. 235; *Prowant*

v. *Sealy,* 187 Pac. Rep. 235; *Butts* v. *Woods,* 16 Pac. Rep. 617; *Jersey City* v. *Morris, etc., Co.,* 41 N. J. L. 66.)

POUND, J. This is an action to recover damages for breach of contract to sell trinitrotoluol, commonly known as TNT, which is a high explosive war material. Plaintiff and defendant on October 24, 1917, entered into a written agreement of sale and purchase of a large quantity of salvaged TNT at thirty-one and twenty-five cents a pound. After defendant had delivered one carload, the government of the United States took over the remaining portion by government order, dated October 30, 1917, paying therefor forty-five cents a pound. Plaintiff contends that defendant induced this taking by the government and that it must respond in damages for the loss sustained by plaintiff. The taking was a legal taking within the National Defense Act of Congress. The question is whether the contract thereby came to an end from causes beyond the control of the parties. The contract contains the following clause:

" It is mutually agreed that the seller will only be called upon to deliver such quantity of above material as may be reclaimed from Russian shells at Kingsland, and that should the quantity be reduced by fire, explosion, *Government taking over the material,* or any cause beyond the control of the Seller, the Seller will not be called upon to replace such shortage."

On well-established principles of the law of contracts, the disposition of this case by the courts below was correct. " When people enter into a contract which is dependent for the possibility of its performance on the continual availability of a specific thing, and that availability comes to an end by reason of circumstances beyond the control of the parties, the contract is *prima facie* regarded as dissolved. The contingency which has arisen is treated, in the absence of a contrary intention made plain, as being one about which no bargain at all was

made." (*Tamplin Steamship Co.* v. *Anglo-Mexican Petroleum Products Co.*, [1916] 2 A. C. 397, 406.)

The subject-matter of the contract was the quantity of material reclaimed from Russian shells as that quantity might be reduced by government taking over the material. The contract is in terms conditional on governmental inaction and subject to the condition that if the government should requisition the goods and render it impossible that the seller should perform its contract, performance should be excused. The taking by government completely frustrated the contract because it left no material upon which the contract could operate. As soon as the material was taken, defendant was released from all obligation to the plaintiff. Defendant had no control over the situation. It merely acquiesced in action which it had no power to stop. Plaintiff could not, therefore, recover the difference between the conditional contract price and the government price. (*The Claveresk*, 264 Fed. Rep. 276; *The Isle of Mull*, 278 Fed. Rep. 131.)

The fact that the defendant sought or welcomed the taking of the TNT by the government is immaterial. It was not bound to say to the government representative: " You must wait until we deliver to plaintiff and then make your requisition on it." Sovereignty is not thus dealt with. Such an exhortation would have been futile. " It was not the defendant or its officials who created the situation. It was the Government of the United States acting through its army officers." (*Mawhinney* v. *Millbrook Woolen Mills*, 231 N. Y. 290, 300.)

But it cannot be said that the taking by the government was induced or procured by the defendant. Defendant was not an unwilling party, but the taking was not dependent 'upon its consent. No doubt it was complaisant if not eager. That its attitude had any effect upon the result is purely speculative. Its dealings with the government had begun prior to the contract with plaintiff of October 24 and had on October 15, 1917, progressed to

the point where the government was contemplating the purchase of the TNT if tests proved satisfactory. An unsatisfactory test had been made on October 19, 1917. After the contract with plaintiff was made defendant did not recall its instructions to its representatives who were conducting the negotiations with the government. On October 27 the government first expressed its intention to take over the material to be re-crystallized so that the foreign matter would be removed. This action was, no doubt, the fruit of the earlier negotiations with defendant, but the case is destitute of the suggestion that after the contract in suit was made defendant went to the government and brought the material to its attention, or induced it to act where inaction was imminent, in order to deprive plaintiff of its prospective advantages.

The government was the sole purchaser of usable TNT as every one knew. If it would take this salvaged material which had not on the date of the contract in suit proved satisfactory, plaintiff had no claim against the defendant. Such is the gist of the entire transaction. When the government was satisfied, plaintiff's rights came to an end.

The judgment should be affirmed, with costs.

HISCOCK, Ch. J., HOGAN, McLAUGHLIN, CRANE and ANDREWS, JJ., concur; CARDOZO, J., concurs in result.

Judgment affirmed.