## SEEDMAN v. FRIEDMAN.
### No. 33.

Circuit Court of Appeals, Second Circuit.

Nov. 27, 1942.

Eugene L. Bondy, of New York City (Bondy & Schloss, of New York City, on the brief), for claimant.

Philip A. Friedman, of New York City (Hartman, Sheridan & Tekulsky, of New York City, on the brief), for trustee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal raises the questions whether or not a contract for sale of its assets made by a debtor in arrangement proceedings after confirmation of the arrangement was nullified by a later order of the court vacating the confirmation order and adjudicating the debtor a bankrupt or was for other reasons unenforceable. The referee and the district court have both ruled that under the circumstances here present the contract fell with the arrangement, and have thus rejected claimant's contention that he is entitled to damages which have a preferred status under Bankruptcy Act, § 64, sub. b, 11 U.S.C.A. § 104, sub. b.

Humpty Dumpty Auto Stores, Inc., filed its petition for an arrangement in January, 1940. The bankruptcy court permitted it to continue its business, subject to the court's active supervision and control, until a plan of reorganization could be formulated by the creditors and approved by the court. In April, 1940, the creditors finally agreed upon a plan which provided for an initial down payment from earmarked bank deposits to certain priority claimants, listed in Schedules A and B annexed to the plan, and for deferred monthly payments to both the priority claimants and the general unsecured claimants, listed in Schedules C and D. The plan named a creditors' committee, which was empowered to dissolve the debtor corporation and liquidate the corporate assets upon a default in the provisions of the arrangement or whenever in its discretion it seemed wise to discontinue the business. The plan also provided that this committee should supervise the debtor's conduct of the business, and that the court should "retain jurisdiction over the debtor and its property" until certain certificates of stock and instruments and records should be delivered and "until the initial payment upon the debts included in Class 3 and Class 4 of Article 1 [i.e., those listed in Schedules C and D] is made." The referee confirmed the plan on June 5, 1940. The order of confirmation provided that "the court shall retain jurisdiction of the within proceeding until all payments provided for in Schedules A and B above referred to and the first distribution in Schedules C and D above referred to shall have been made and paid."

From the date of the filing of the petition for an arrangement until confirmation of the plan the debtor sustained continuous financial losses. And when the court issued the confirmation order there was a default in the deferred payments due under the plan on June 1. Nine days after the issuance of the confirmation order the creditors' committee decided that the business should be liquidated. After considering various bids the debtor and the committee made a contract with claimant on June 27 for the sale of the debtor's merchandise and fixtures. Since the contract was subject to the Bulk Sales Act, N.Y. Personal Property Law, Consol. Laws N.Y. c. 41, § 44, claimant sent a notice of the terms of the sale—to be closed July 19—to all the creditors of the debtor. On July 13, upon receipt of a petition of a creditor not a member of the creditors' committee, the referee issued an order to all interested persons to show cause why the confirmation order should not be set aside, the debtor adjudged a bankrupt, and such other and further relief granted as might be appropriate. This order included a stay of the proposed bulk sale until further action by the court. The creditor in his petition had called attention to the sale and had suggested that the price was inadequate; but he had relied for relief primarily upon an allegation that fraud had been practiced upon the court in the procurement of the confirmation order, inasmuch as the creditors' committee, and therefore the debtor, knew at the time the order was issued that the debtor was in default in its obligations under the plan.

The hearing thus instituted resulted in a referee's order in four paragraphs, of which the first three vacated the order of confirmation of the plan, adjudicated the debtor a bankrupt, and directed the qualification of Abraham E. Friedman as trustee upon filing a $5,000 bond. The fourth paragraph ordered "that the proposed bulk sale to George J. Seedman be and the same is hereby permanently restrained and enjoined and that the said George J. Seedman and all other persons be and they are hereby restrained and enjoined from interfering in any way with any of the assets of the bankrupt." No reason for the order or any part of it is set forth. The referee's memorandum upon it is likewise quite vague, and says only that the creditor's application to vacate and set aside the arrangement should be granted, "both for the reason that the provisions of the statute with regard to arrangements were not complied with, and further under the provisions of Article XI of the amended Bankruptcy Act." From the evidence taken at the hearing, however, it appears that all parties concerned considered the issue one of fraud in obtaining confirmation of the plan.

Claimant filed no petition for review of this order, and one of the trustee's contentions is that it made the issues herein res judicata against claimant. Though the show-cause order of July 13, 1940, was not addressed to claimant by name, he filed an affidavit in opposition to the pleading, and, being subpoenaed as a witness, was examined by his counsel over the petitioning creditor's objection and upon the referee's decision to hear anyone "able to throw any light on the equities of the case." In general the evidence adduced concerned the financial backtrackings of the debtor up to the date of the issuance of the confirmation order. The petitioner made some attempt to show that the purchase price set in claimant's contract was a hard one for the creditors, but he proffered no evidence of fraud in its inception.

After the trustee had taken over, claimant submitted his bid of the contract price for acceptance. The trustee, however, auctioned off the assets to a stranger to the former proceedings at a price in excess of that offered by claimant, and the court confirmed that sale. The purchaser later assigned his bid to claimant at a profit. And claimant then filed his "Priority Claim" for damages for breach of the contract. The referee expunged the claim altogether on the grounds both that the injunction order was res judicata against the claim, and that, the arrangement having been set aside, everything dependent upon the powers it conferred likewise fell with it. On petition for review, the district court affirmed, adding, as new grounds for the nullification of the contract, that the court's consent was a prerequisite to its validity, since jurisdiction was retained after the confirmation order, that the supervening impossibility created by the injunction order excused the debtor's performance under the contract, and that the Bulk Sales Act automatically rendered the contract void when an injunction was obtained by a creditor. The court thought, however, that claimant might recover for benefits rendered to the debtor if any could be proved. It appeared that claimant, among other things, had managed the debtor's business without compensation from July 7, 1940, to July 27, 1940, in anticipation of the execution of the contract, and had made wage disbursements and paid for advertisements for the debtor during the same period. The court, therefore, referred back to the referee, and left entirely to his discretion, the question whether a claim based on these asserted benefits should be allowed. Both parties have appealed here.

There are thus before us six main points which have been pressed with reference to the expunged claim: (1) whether the contract of purchase was invalid because lacking the approval of the court under the jurisdiction it had retained after the confirmation order; (2) whether the setting aside of the confirmation order automatically avoided the contract entered into pursuant to the powers conferred by that order; (3) whether claimant had constructive knowledge of fraud in the procurement of the confirmation order, and therefore contracted subject to the setting aside of the confirmation order; (4) whether the injunction order precluded claimant's demand for damages under the doctrine of res judicata; (5) whether a supervening impossibility created by the injunction order excused the debtor's performance under the contract; and (6) whether the Bulk Sales Act invalidated the contract. These will be considered in order.

I. The trustee's contention is that the court's approval of the contract was a prerequisite to its validity, because the

court retained jurisdiction after the confirmation of the plan, first by the terms of § 369(3) of the Bankruptcy Act, 11 U.S. C.A. § 769(3), and second by the explicit provision of the confirmation order itself.

■ Section 369(3) provides that "the court shall in any event retain jurisdiction until the final allowance or disallowance of all debts, affected by the arrangement * * * which * * * arise from the rejection of executory contracts by the debtor and are proved within such time as the court may direct." At the time the parties negotiated this contract the court had under consideration a petition filed by the debtor before the issuance of the confirmation order and seeking permission to reject a lease. But this situation does not fall within the terms of the statute, for the debt which might have arisen from the rejection of this executory contract would not have been one "affected by the arrangement." In this connection, as pointed out by Professor Moore, 8 Collier on Bankruptcy, 14th Ed. 1941, 1250, "affected by" means "provided for by." Compare § 370, which declares that upon allowance of any of the debts specified in § 369, "the rights provided by the arrangement shall inure to the creditors to whom such debts are owing," and § 371, which states that confirmation discharges a debtor from his debts "provided for by the arrangement." Here, however, there was no such provision; the arrangement stipulated merely that "the [creditors'] committee will confer with the debtor with respect to the debtor making motions before the court permitting it to reject the unexpired portions of any lease now in effect." Cf. In re Greenpoint Metallic Bed Co., 2 Cir., 113 F.2d 881; Mohonk Realty Corp. v. Wise Shoe Stores, 2 Cir., 111 F. 2d 287, certiorari denied 311 U.S. 654, 61 S.Ct. 47, 85 L.Ed. 418.

■ Even assuming § 369(3) to be applicable, the court properly retained jurisdiction under it only in so far as necessary to carry out its provisions and the terms of the arrangement. Here, if the lease had been rejected, the court could have reopened the arrangement and made some provision for the payment of the resulting claims. See 8 Collier on Bankruptcy, 14th Ed. 1941, 1242. The court,

however, was without authority to exercise a continuous and active control over the conduct of the debtor's business. Indeed, a general provision as to "title to the property" under the Bankruptcy Act states, inter alia, that "upon the confirmation of an arrangement" or "at such later time as may be provided by the arrangement" or confirmation order, "the title to the property dealt with shall revest in the * * * debtor." § 70, sub. i, 11 U.S.C.A. § 110, sub. i. Unless required, therefore, by the terms of the arrangement or the court's order, it seems clear that the court's stamp of approval was not essential to the validity of the sale of the debtor's assets.

The trustee asserts, however, that the court's consent was required by the provision in the confirmation order for retention of jurisdiction by the court until the making of "all payments provided for in Schedules A and B above referred to," coupled with the further fact that—although all other prerequisites had been fulfilled—these payments had not been made in full at the time the contract was formed. In ready answer claimant argues that since the arrangement did not include the quoted provision, its incorporation in the confirmation order was not within the court's authority. If there is a conflict between the terms of the arrangement and the confirmation order, there is a serious question as to the validity of the latter in view of the language of the statute, § 368, that the court shall retain jurisdiction "if so provided in the arrangement." Professor Moore says that the court has no discretion as to such retention, and quotes a House Committee report on a forerunner of the Chandler Act to the effect that the wishes of the creditors should bind the court. 8 Collier on Bankruptcy, 14th Ed. 1941, 1244. See, also, In re Independent Macaroni Co., D.C.S.D. N.Y., 46 F.Supp. 813, 815. But we think decision of this question is not necessary, for a proper reading of the order, one which will avoid this dispute, as well as be more consistent with earlier provisions of the order, would make the referent the payments, rather than the schedules. The earlier provisions of the order were limited to payments incidental to the distribution of the earmarked bank deposits.[1] So in-

---

[1] Prior sections of the confirmation order provide for the distribution of funds deposited in the bank "to cover payment of tax claims, in part, and expenses of administration, as set forth in Schedules A and B annexed hereto," and for the

terpreted, the provision merely renders explicit the court's implied power to insure distribution of the funds deposited for an initial payment of the debts set forth in Schedules A and B. §§ 337(1, 2), 376(2). Cf. In re J. B. Pollak Co., 2 Cir., 86 F.2d 99, 102. And since, as the parties have stipulated, this initial payment of the deposited funds took place even before the parties entered into the contract, this requirement of the order had already been fulfilled, as had also all the other conditions upon which retention of jurisdiction was based.

But even if this interpretation is incorrect, retention of jurisdiction, at least under the circumstances of this case, should still be operative only to insure compliance with the terms of the arrangement and the statutory provisions, not to pass on all details of the debtor's business. 8 Collier on Bankruptcy, 14th Ed. 1941, 1246. When the court here retained jurisdiction, § 377 authorized it to intervene upon any default in the terms of the arrangement and either to dismiss the proceedings or to adjudicate the debtor a bankrupt, 8 Collier on Bankruptcy, 1246, 1247; but until that time its function is essentially one of, at most, watchful waiting. See In re Hession, 7 Cir., 97 F.2d 902, 904. Its consent, therefore, was not a prerequisite to the validity of the contract entered into pursuant to the express terms of the arrangement.

■ II. Did, however, the setting aside of the confirmation order automatically avoid the contract because entered into pursuant to the powers granted in that order? If contracts formed in the interval between the confirmation of an arrangement and the subsequent setting aside of that confirmation for fraud are to be thus automatically cancelled, the policy of Chapter XI to re-establish temporarily embarrassed debtors to their former standing in the business world would be substantially nullified; for third parties would wisely refuse to do business with the reorganized debtors subject to such risks. See Vogel v. Mohawk Electric Sales Co., 2 Cir., 126 F.2d 759, 761. In the instant case as between the creditors who had compromised their claims with the debtor and the bona fide claimant who transacted business with the debtor after its reorganization, we can see no reason for favoring the former, especially in view of the fact that their representatives were responsible for the fraud which caused the setting aside of the confirmation order. And express provisions of the Bankruptcy Act support the view that the setting aside of a confirmation order is without prejudice to rights which arise from bona fide transactions theretofore entered into in reliance upon the original order. Thus, § 64, sub. b, supra—relied on by claimant here as establishing his priority—gives priority to debts contracted "after the confirmation of an arrangement" over debts provable in the arrangement, in the event the arrangement is set aside; while § 386 (3), 11 U.S.C.A. § 786(3), providing for the modifying or altering of an arrangement procured by fraud, expressly protects those not participating in the fraud, or acquiring rights innocently and for value subsequent to the confirmation of the arrangement. See, also, Ex parte Hamlin, D.C.Mass., 11 Fed.Cas. page 367, No. 5,993; In re Wells, D.C.W.D.Pa., 4 F. 68; and cf. In re Lilyknit Silk Underwear Co., 2 Cir., 73 F.2d 52; also § 70, sub. h, 11 U.S.C.A. § 110, sub. h, which vests the bankruptcy trustee, upon the setting aside of an arrangement, with the title to all of the property of the bankrupt "as of the date of the final decree setting aside the arrangement."

■ III. The trustee argues, however, that claimant had constructive knowledge

---

assignment of any balance to the debtor "after payment of the claims set forth in Schedules A and B aforesaid." The funds deposited in the bank amounted to $2,700. Payment of the tax claims, in part, provided for in Schedule A, and of the expenses of administration, provided for in Schedule B, would total $2,648.97. The balance of the tax claims was prorated over the period of a year and amounted to nearly $2,000. The necessary conclusion is that the "payment of the claims set forth in Schedules A and B aforesaid" refers to the "payment of tax claims, in part, and expenses of administration." And the whole tenor of these quoted provisions so interpreted leads to a decisive implication that, by the provision under discussion in the text, the court intended to retain jurisdiction only until the payments from the deposited funds had been made. The parties have stipulated that the initial payment provided for in Schedules A and B had been made prior to June 24, 1940.

of the fraud in the procurement of the confirmation order because reasonable investigation before making the contract should have revealed to him that the debtor was in default in the payment of its scheduled indebtedness when the order was entered. Hence, it is asserted, claimant took his contract subject to this infirmity in the confirmation order which might—and did—lead to its being set aside. The evidence in the case does not show, however, that claimant knew, prior to the negotiation of the contract, that the court had confirmed the arrangement without notice of the debtor's defaults; and we do not believe his investigation should put him on constructive notice of this fact. The financial records before the court were few and muddled, and he may properly have assumed that the court itself had determined this important matter to its satisfaction before issuing its confirmation order. All claimant definitely knew was that the debtor was in bad financial shape, having continuously lost money during its reorganization, and that the arrangement expressly provided that the creditors' committee could liquidate the business when it seemed wise to do so or upon a default. We do not think he can be held to have acquired knowledge of such fraud in the procurement of the confirmation order as was discovered by the referee in bankruptcy only after a thorough hearing and investigation.

■ IV. The referee relied largely upon res judicata as ground for expunging the claim in issue. But this cannot be an appropriate ground here, for, as we have seen, no issue of fraud by claimant in procuring the contract was passed upon at the hearing and the judgment containing the injunction against him does not purport to hold his contract invalid. Moreover, as we shall point out below, the adjudication of bankruptcy constituted a natural ground for the injunction. It is clear, therefore, that the issues before us now are not res judicata. Myers v. International Trust Co., 263 U.S. 64, 44 S.Ct. 86, 68 L.Ed. 165.

■ V. The court, however, stressed the injunction as a supervening act making impossible the performance of the contract. There has been much discussion in this case of the rule that performance of a contract is excused where it is forbidden by a judicial order. We shall not, however, go into that problem further than to say that the rule is not applied where the fault of the party owing performance under the contract contributed to the order. A. L. I. Restatement, Contracts, § 458. It would appear here that there was sufficient contributory fault on the part of the debtor, whose fraud was the basis of the order, to prevent application of the rule. The Marpesia, 2 Cir., 292 F. 957; cf. Lorillard v. Clyde, 142 N.Y. 456, 37 N.E. 489, 59 N.Y.St.Rep. 781, 24 L. R.A. 113.[2] But we think the court below overlooked the adjudication in bankruptcy of the debtor, which, under well settled rules, far from excusing performance con-

[2] The cases relied on below, Texas Co. v. Hogarth Shipping Co., 256 U.S. 619, 41 S.Ct. 612, 65 L.Ed. 1123, and Mawhinney v. Millbrook Woolen Mills, 231 N.Y. 290, 132 N.E. 93, 15 A.L.R. 1506, to which might be added Nitro Powder Co. v. Agency of Canadian Car & Foundry Co., 233 N.Y. 294, 135 N.E. 507, 508, state the limitation on the rule rather vaguely as one where the order is "induced or procured," and not merely "sought or welcomed" [231 N.Y. 290, 132 N.E. 93], by the party. These were cases of government requisitioning of goods already contracted for. Only in the Mawhinney case was there anything approaching contributory fault; there the party had informed the government that it had materials useful to the army. The other cases stress both that no information was given the government and that no advantage accrued from the government's act. These cases are not au-

thority that fraud resulting in a judicial action—which would benefit those procuring it by the higher price to be obtained for the property—would nullify the contract. Another case relied on by the trustee, People v. Globe Mutual Life Ins. Co., 91 N.Y. 174, 64 How.Prac. 485, as applying the rule to the case of the dissolution of a corporation, does not show the contrary. The court found there was no evidence as to the cause of the dissolution, see Central Trust Co. of Illinois v. Chicago Auditorium Ass'n, 240 U.S. 581, 36 S.Ct. 412, 60 L.Ed. 811, L.R. A.1917B, 580; moreover, People v. Security Life Ins. & Annuity Co., 78 N.Y. 114, 34 Am.Rep. 522, 7 Abb.N.C. 198, had held dissolution no breach. Dissolution under state laws is, of course, subject to different rules as to the survival of claims from those governing provability in bankruptcy. In re National Surety Co., 283 N.Y. 68, 27 N.E.2d 505; 6 Wil-

stitutes a breach of an unperformed contract. And with that fact quite clear, the injunction appears in its appropriate role as the grant of process authorized under § 2, sub. a(15), 11 U.S.C.A. § 11, sub. a(15), to secure enforcement of the Act—process "obviously necessary to the attainment of the ends of justice" and "to give protection to the estate against waste or disintegration." Steelman v. All Continent Corp., 301 U.S. 278, 289, 57 S.Ct. 705, 710, 81 L. Ed. 1085.

Whatever doubt there might be in state law (other than in New York[3]) as to the effect of insolvency as an "anticipatory breach" of a contract, the present bankruptcy law, representing some development from earlier rules, 3 Collier on Bankruptcy, 14th Ed. 1941, 1881–1886, 1915, 1916, is quite explicit. Provision is made by § 63, sub. a(9), 11 U.S.C.A. § 103, sub. a(9)—applicable where an arrangement is superseded by bankruptcy, § 355, 11 U.S. C.A. § 755—for the proof of "claims for anticipatory breach of contracts, executory in whole or in part," § 63, sub. a(9), and for the acceptance or rejection of such contracts by the trustee, § 63, sub. c. And by § 70, sub. b, 11 U.S.C.A. § 110, sub. b, the trustee has sixty days after adjudication (unless otherwise ordered) to make and report his choice. The new provision of the Chandler Act, § 63, sub. c, is particularly important; it says: "Notwithstanding any State law to the contrary, the rejection of an executory contract or unexpired lease, as provided in this Act [title], shall constitute a breach of such contract or lease as of the date of the filing of the petition in bankruptcy."[4] This, as Professor Moore says, "removes any doubt" and also "follows the lead of the courts by expressly relating the breach back to the filing date." 3 Collier on Bank-

ruptcy, 14th Ed. 1941, 1886. Here the trustee, with the court's approval, refused the contract when tendered by claimant and entered into a contract with another.

VI. We come, then, to the trustee's final contention, that the contract was void under the Bulk Sales Act, N. Y. Personal Property Law, § 44. That Act provides that any sale in bulk of "a stock of merchandise * * * shall be void as against the creditors of the seller" unless certain specified acts are performed. In brief it requires the seller to deliver a list of his creditors and an inventory of his goods to the buyer, and the buyer to retain the inventory in his possession for ninety days thereafter for inspection by the creditors and to send a notice of the sale and of the price thereof to all creditors at least ten days before transfer of the goods takes place.

▮ It is admitted that the purchaser obtained the inventory and the creditors' list, and that he sent out notices of the sale. Against this the trustee argued that, inasmuch as a creditor instituted a proceeding to enjoin the sale before the expiration of the ten-day period after notices were mailed, the statute was not complied with, and hence the sale was void. But this would mean that any creditor, at his whim, might avoid any sale, provided only that he interfere before the expiration of the ten-day period. We find the argument untenable.

▮ The court below adopted a somewhat different theory for invalidating the contract, holding that under the statute claimant assumed the risk of the contract's being actually enjoined *for any reason* whatsoever. But, although there appear to be no New York cases on that point, it seems clear that the statute was designed

---

liston, Contracts, 1936, § 1939; and compare People v. National Trust Co., 82 N.Y. 283, with People v. Globe Mutual Life Ins. Co., supra. Moreover, the New York courts have definitely held bankruptcy to be an anticipatory breach of contract. Pavia v. Park-Lexington Corp., 138 Misc. 600, 245 N.Y.S. 527, affirmed without opinion, 234 App.Div. 668, 252 N.Y.S. 931; In re Catts, D.C.S.D. N.Y., 33 F.2d 963, affirmed In re Merchants' & Manufacturers' Exchange of New York, 2 Cir., 35 F.2d 1018, certiorari denied Morris v. Pavia, 280 U.S. 605, 50 S.Ct. 86, 74 L.Ed. 649. Cf. Central Trust Co. of Illinois v. Chicago Auditorium Ass'n, supra.

[3] See cases in note 2, supra, as to the New York law.

[4] The remaining portion of the section, "or of the original petition under chapter 10, 11, 12, or 13 of this Act [title]," obviously does not apply here, where the contract was made after the original petition; and the same is true as to §§ 352 and 378, 11 U.S.C.A. §§ 752, 778. Cf. 8 Collier on Bankruptcy, 14th Ed.1941, 949, 986, 1400; see Vogel v. Mohawk Electric Sales Co., 2 Cir., 126 F.2d 759, 762. The "filing date" here is that of the creditor's petition for the bankruptcy adjudication.

solely to put creditors on notice of pending bulk sales, and thus to afford them an opportunity to protect themselves against a fraudulent transfer of the assets intended for the payment of their debts. See dissenting opinion in Wright v. Hart, 182 N. Y. 330, 348 et seq., 75 N.E. 404, 2 L.R.A., N.S., 338, 3 Ann.Cas. 263, which was adopted in Klein v. Maravelas, 219 N.Y. 383, 387, 114 N.E. 809, L.R.A.1917E, 549, Ann.Cas.1917B, 273; also Merchants Refrigerating Co. v. Benjamin Titman Corp., Sup., 20 N.Y.S.2d 280, 284, affirmed 260 App.Div. 919, 24 N.Y.S.2d 303, affirmed 285 N.Y. 663, 34 N.E.2d 374; William L. Blumberg Co. v. Farber, 170 Misc. 930, 11 N. Y.S.2d 427, 428; Royal Indemnity Co. v. Ginsberg, 157 Misc. 507, 284 N.Y.S. 551, 556. So, the only question is whether, disregarding judicial interference with the proposed sale, the statute was in fact complied with.

The single possible infirmity in the satisfaction of the detailed statutory requirements was not even claimed or argued by the parties before us. It appears that while the notice to the creditors, a lengthy summary of the still longer contract, was in other respects accurate, it did somewhat understate the purchase price by failing to mention that claimant, in addition to his agreed and stated payments, had also promised to assume the debtor's obligations under certain leases. This should not require the avoidance of the sale. By this notice creditors were given even more reason to inquire into the transaction than had it been complete in all details. Claimant appears to have omitted the provision in good faith, with the hope of negotiating for a lower rental with the landlords, and not with any intent to conceal. Technical and unimportant deviations from the statute are not to be penalized. See Ben Bimberg & Co. v. Unity Coat & Apron Co., 150 Misc. 836, 270 N. Y.S. 580, 582, affirmed without opinion 244 App.Div. 777, 280 N.Y.S. 220; William L. Blumberg Co. v. Farber, supra; Thomas v. Blizzard, Sup.App.T., 170 N.

Y.S. 11, 12; cf. Marcus v. Knitzer, 168 Misc. 9, 4 N.Y.S.2d 308; Heilmann v. Powelson, 101 Misc. 230, 167 N.Y.S. 662; National City Bank v. Huey & Martin Drug Co., 113 S.C. 333, 339, 102 S.E. 516.

We conclude, therefore, that the referee in bankruptcy and the district court erred in expunging claimant's claim for damages for breach of his contract. The claim should be restored and the referee should then proceed to determine the damages. And if the trustee desires to raise any other issue as to the validity of the contract than those presented on this appeal, he should be allowed to do so. If and when the amount of the claim is fixed, priority over debts provable in the arrangement proceeding appears to follow under the express terms of § 64, sub. b, supra. This grants such priority to "debts contracted" after the confirmation of an arrangement later set aside. Since a "debt" under the Act "shall include any debt, demand, or claim provable in bankruptcy," § 1(14), 11 U.S.C.A. § 1(14), this claim is therefore included. On claimant's appeal the case is accordingly reversed and remanded for further proceedings in accordance with this opinion.

On the trustee's appeal, the re-reference to the referee to determine whether or not claimant conferred any benefits upon the bankrupt estate should stand. Upon the view taken by the court below that no valid contract was shown, a claim for benefits conferred, if proven, would be proper. 8 Collier on Bankruptcy, 14th Ed. 1941, 1795–1797, 1858–1862; § 63, sub. b, 11 U.S.C.A. § 103, sub. b. If a claim for damages for breach of contract is allowed, the claim for benefits conferred naturally will be of limited importance or even may disappear completely. But claimant may be able to prove benefits conferred on the estate after the date of breach of his contract. § 63, sub. b, supra; 3 Collier on Bankruptcy, 1913. We do not attempt to pass on these matters at this time.

Affirmed on the trustee's appeal; reversed and remanded on claimant's appeal.