In the Matter of John W. **STARKS,** Debtor.

No. 63 B 8068.

United States District Court
N. D. Illinois, E. D.
Jan. 18, 1968.

Charles David Maley, Lake Bluff, Ill., for referee.

Charles Liebman, Chicago, Ill., for petitioner Leonard M. Groupe.

## MEMORANDUM OPINION

DECKER, District Judge.

This is a petition for review of an order entered by a referee in bankruptcy in connection with a wage earner's plan under Chapter XIII of the Bankruptcy Act, 11 U.S.C. §§ 1001–1086. Petitioner, Leonard M. Groupe, was attorney for the debtor in the above-named cause. Petitioner claims that he is aggrieved by an order entered by Referee Robert Tieken on June 22, 1967 pertaining to that case.

Before examining the alleged legal basis of the petition, a brief summary of the relevant facts is necessary. On August 22, 1963 John Starks filed a petition in this court under Chapter XIII. Petitioner was attorney for debtor at that time and throughout the succeeding events leading up to the order of June 22, 1967. Schedules were filed with the petition which indicated that the debtor had outstanding secured debts of $1350.00 and unsecured debts of $402.21, for a total of $1752.21. His personal property was valued at $100, consisting of personal clothing and an equity interest in certain household furniture. The debtor was married and employed as a conveyer attendant. His yearly income was in the area of $5500 to $6000.

On September 30, 1963 the Referee entered an order of confirmation of the debtor's plan under Chapter XIII. Prior to this order there had been the requi-

site notice to creditors and a meeting of creditors at which the necessary acceptance of the plan was obtained. The plan as confirmed provided for the eventual payment of one hundred per cent of the principal amounts due the creditors. Most important for consideration here are the following paragraphs of the plan:

"2. This Plan contemplates the payment by the debtor, under the supervision of his attorney, out of his future earnings, a sum sufficient to cover the fees and expenses of these proceedings, distributions made through the Trustee to creditors participating in the Plan and distributions made independently to creditors not participating in the Plan.

"3. The debtor will pay monthly to the Trustee appointed by the Court a sum equal to three per cent or more of the total of the reasonably anticipated participating claims, which sum is estimated to be approximately $25.-00. In the event that a greater amount in claims is allowed than anticipated so that the sums paid will not be at least the equivalent of three per cent per month, the debtor will, upon notification of such deficiency, pay to the Trustee within thirty days of such notification a sum sufficient to bring the past payments up to the required amount and will increase the monthly deposits to a sum equal to at least three per cent of the new total of actual or reasonably anticipated claims."

"8. The Court may, from time to time during the period of extension, increase or decrease the amount of any of the installment payments provided for by this Plan or extend or shorten the time for any such payment where it shall be made to appear, after hearing upon such notice as the Court may require, that the circumstances of the debtor so warrant or require.

"9. The future earnings or wages of the debtor shall remain under the supervision and control of the Court for the purpose of enforcing this Plan."

At the same time that the order of confirmation was entered, another order

was entered which declared that petitioner was entitled to an attorney's fee of $300 for fifteen hours of valuable services he had performed in the Chapter XIII proceeding. The petition for this attorney's fee had recited that the attorney and debtor had previously entered into an agreement for a $300 fee, and the Referee apparently found that this was a reasonable sum. The Referee's order recited that $75 of this fee had been paid and that no part of the unpaid balance of $225 could be

"paid out of the estate other than by the further Order of this Court, which order may be requested on ex parte motion by petitioner at any time hereafter while any portion of such fee shall appear to remain unpaid."

It should be mentioned that this order was drafted by petitioner himself and then submitted to the Referee.

The sequence of events following the confirmation of the plan and entry of the order for attorney's fees is not fully detailed in the documents before me, nor was it presented completely in oral argument, but the main developments are clear. Petitioner continued to serve the debtor and collected regular amounts of money from him for the purpose of carrying out the plan and for the purpose of paying the secured creditors, which were not included in the plan. Petitioner issued a "Remittance Book" to the debtor to evidence the payments made by him to petitioner. By May 8, 1967 the payments totalled $2140.

The following disbursement of the $2140 appears to have been made by petitioner: The two secured creditors, neither of which had approved the plan, were paid a total of $700. The trustee under the plan was paid $676. $20 was paid as court fees in connection with the Chapter XIII proceeding itself and $4 as an appearance fee in a separate suit filed against the debtor in the Municipal Court in 1964. Petitioner paid to himself the $300 for attorney's fees allowed by the Referee's order of September 30, 1963; presumably this amount includes the $75 paid before the order

was entered. Finally, petitioner received $440 for himself "as attorney's fees for professional services rendered subsequent to confirmation of the Plan." This last amount was paid to him on the basis of $10 per month for forty-four months.

The debtor's total payments to petitioner thus were disbursed as follows:

| | |
|---|---|
| Secured creditors | $ 700.00 |
| Trustee | 676.00 |
| Court fees | 24.00 |
| Petitioner | 740.00 |
| | $2140.00 |

It is apparent from this that the total liabilities of $1,752.21 were not paid in full. Furthermore, the amount paid to the trustee is far short of what was called for by the plan; the trustee received only $676 over a period of 44 months, whereas according to the figure of $25 per month called for by Paragraph 3 of the plan, the trustee should have been paid $1100 for this period. It is significant that during these 44 months petitioner was receiving a regular $10 per month, even though the trustee was receiving, via petitioner, far less than the plan required. As petitioner indicated in a letter to the debtor's wife on June 10, 1967, creditors have not yet been fully paid. $230.24 remains to be paid to creditors under the plan, and an estimated $177.40 is due for trustee's expenses and fees. Also, $242.78 is due to an outside, secured creditor whom petitioner apparently has undertaken to deal with on the debtor's behalf. In total, petitioner's letter indicates $650.42 of debt remaining as of June 1, 1967. Subsequent payment of $16 to the trustee reduced this to $634.42.

Sometime in the first few months of 1967 the debtor orally complained to the Referee that he had made sufficient payments under the plan to entitle him to a discharge. On the Referee's own motion a rule was issued against the trustee and the debtor's attorney, petitioner, to produce their records of account. On the basis of the records, the Referee entered an order on June 13, 1967 making certain findings of fact and concluding that petitioner had no authority to make the deductions of $10 per month from debtor's payments to him, nor had he authority to make collections from the debtor under the plan or to pay any sums to creditors outside the plan. The Referee ordered petitioner to pay the $440 to the trustee, which petitioner promptly did. Petitioner was also ordered to fully account for moneys coming into his hands in connection with this proceeding.

Petitioner produced the full accounting, after which the court issued an additional order on June 22, 1967. It is this order, amending the June 13 order, which aggrieves petitioner. The findings of fact in the order correspond to the sequence of facts I have outlined above. The Referee concluded that petitioner had no authority to do the following:

(1) to direct the debtor to make payments called for by the plan to petitioner;

(2) to pay outside the plan any secured debts or other expenses on behalf of the debtor;

(3) to collect from the debtor without court order the attorney's fee provided for at the time of confirmation of the plan; and

(4) to charge or collect from the debtor additional attorney's fees outside the plan for matters covered in the Chapter XIII proceeding.

In addition to ordering the return of the $440 in additional fees, the Referee ordered petitioner to pay over to the trustee $229, which covered the $225 unpaid balance for the original attorney's fee and the $4 appearance fee in the separate Municipal Court suit.

Petitioner complains that the Referee was without authority to enter this order, as well as the order of June 13. The memoranda of law submitted to me have clarified the disputed issues here, and the basic questions to be decided now appear to be three:

1. Did petitioner have authority, independently and without court

supervision, to receive payments from the debtor to be turned over to the trustee for use under the plan, or to be used by petitioner for payment of creditors not covered in the plan or for other expenses of debtor?

2. Did petitioner have authority to collect directly from the debtor without court order the unpaid balance of the court-approved attorney's fee?

3. Did petitioner have authority, independently and without any court supervision, to collect additional attorney's fees from the debtor for services rendered subsequent to confirmation in connection with the wage earner's plan?

As petitioner and respondent have made clear, the answers to these questions will have significant future implications as to the scope of the powers and jurisdiction of the referees in the administration of Chapter XIII proceedings.

With regard to the first question, petitioner's position is that the Referee in a Chapter XIII case, after the plan is confirmed, is limited to supervision and control of the specific property and amount of earnings designated in the plan for the benefit of participating creditors. The Referee contends that jurisdiction is retained by him over all of the debtor's property and future earnings until the plan is consummated, subject only to the limitation that his authority must be used solely for the purposes of the plan. If petitioner's position is accepted, the Referee's order would be incorrect in concluding that the debtor's attorney had no authority for dealing with payments to the trustee, to outside creditors, or for new expenses of the debtor. Under petitioner's view, the Referee could deal only with approximately $25 per month in this case and no more. Under the Referee's view, any earnings of the debtor could be controlled and supervised so as to effectuate and protect the plan.

Actually it appears that not even the amount of $25 per month was turned over to the trustee. Petitioner does not dispute the Referee's power to control this basic amount required under the plan. It thus would seem, in view of petitioner's statement that the trustee only received $676 over 44 months, that the Referee unquestionably did have jurisdiction over some of the debtor's payments to petitioner beyond that amount. This additional amount was about $400, inasmuch as $676 rather than $1100 was all that was paid over to the trustee.

The question remains whether the Referee was correct in assuming that he retained jurisdiction over *all* payments made by the debtor to his attorney, including those not required to be turned over to the trustee. This assumption is supported by the general language of the relevant statutory provisions:

"Where not inconsistent with the provisions of this chapter, the court in which the petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located, and of his earnings and wages during the period of consummation of the plan." 11 U.S.C. § 1011.

"During the period of extension, the court—(1) shall retain jurisdiction of the debtor and his property for all purposes of the plan and its consummation and shall have supervision and control of any agreement or assignment, provided for in the plan, in respect to any future earnings or wages of the debtor; * * *." 11 U.S.C. § 1058(1).

"A plan under this chapter—(4) shall include provisions for the submission of future earnings or wages of the debtor to the supervision and control of the court for the purpose of enforcing the plan; * * *." 11 U.S.C. § 1046.

These provisions appear to say that the court has jurisdiction over any and all of the debtor's future earnings. This is in accord with the central orientation of wage earner plans under Chapter XIII:

"Relief under Chapter XIII is predicated upon the primary concept that

the debtor is to effect a composition or extension out of his future earnings, and the plan must provide for the submission of his future earnings or wages to the supervision and control of the court for the purpose of enforcing the plan. That supervision and control are strengthened by the exclusive jurisdiction over future earnings and wages conferred by [§ 1011], and that jurisdiction is particularized to some extent by the further provision of [§ 1058(1)] which vests the court, after confirmation of a plan, with 'supervision and control of any agreement or assignment, provided for in the plan, in respect to any future earnings or wages of the debtor.'" 10 Collier, Bankruptcy (14th ed.) ¶ 23.01.

"[T]he basic concept of relief under Chapter XIII is that the settlement is to be made primarily out of the future earnings or wages of the debtor." Id. at ¶ 28.05.

§ 1011 gives the court control over all of the debtor's property and earnings. "The only 'property' most individual bankrupts have is their ability to earn wages." Lee, "Chapter XIII in Historical Perspective," Proceedings of Fourth Seminar for Referees in Bankruptcy 275 (1967). If the debtor is to be effectively assisted in carrying through a plan for the extended payment of his debts, it is necessary for the court to have potential control over all of his earnings, although this control can only be exercised for the purpose of meeting creditors' claims and aiding the debtor in regaining solvency.

Petitioner appears to admit considerable breadth to § 1011, but claims that § 1058(1) "gives the court supervision and control only of such of the debtor's future wages as may be provided for by the plan." This view of § 1058(1) as limiting § 1011 is not correct. The "agreement or assignment" as to earnings mentioned in § 1058(1) is an important example of wages subject to court control, but it is not the *only* form in which the earnings can be controlled: § 1058(1) "make[s] clear that the

court's jurisdiction continues throughout the Chapter XIII proceeding, * * *. This section serves to extend the summary jurisdiction of the court to *all* property *owned* by the debtor, even though not in his *possession*." (First emphasis added.) Copenhaver, "Chapter XIII, Wage Earner's Plan," Proceedings of Fourth Seminar for Referees in Bankruptcy 289 (1967). No commentator has given any indication that § 1058 (1) has a limiting function. In In re Clevenger, 282 F.2d 756, 757 (7th Cir. 1960), a Chapter XIII case, the court found that the referee "had jurisdiction of the debtor and all of the property of the debtor in which he had an interest." The referee was held to have authority to enjoin the prosecution of reclamation petitions brought by non-participating secured creditors. This holding suggests the breadth of the referee's jurisdiction over the debtor's property. The court obviously did not confine its jurisdiction to the monthly payments required by the wage earner's plan.

Another important statutory section makes it even clearer that the referee's powers are not limited to the sums provided for in the plan. § 1046(5) provides that the court may "increase or reduce the amount of any of the installment payments provided by the plan" during the period of extension, if the debtor's circumstances warrant this. Such an increase was allowed in *Clevenger*, and is provided for in Paragraph 9 of the present debtor's plan.

It is clear, then, that the Referee's authority over the debtor's property and earnings continues in full scope until the plan is terminated. At times the Referee has appeared to argue here that this continuing jurisdiction precludes the debtor's attorney from dealing in any way with the debtor's payments to the trustee or to creditors outside the plan. At other times, however, the Referee has admitted the utility of an attorney's assistance in the carrying out of a plan, so I will not consider this in dispute here. As Paragraph 2 of the plan itself stated, the plan contemplated

that the debtor would pay, "under the supervision of his attorney," a sum sufficient to cover the costs of the proceedings and distributions to both participating and non-participating creditors. This provision is not inconsistent with Paragraph 9, which stated that the "future earnings or wages of the debtor shall remain under the supervision and control of the Court for the purpose of enforcing this Plan."

My conclusion, on the basis of these statutory provisions and terms of the plan, is that the attorney was not without authority to assist the debtor in making payments to the trustees or to outside creditors or even for such things as court expenses. Nevertheless, the attorney's authority was not and could not be unfettered. It was subject to the continuing supervision of the court established by Chapter XIII's provisions and by Paragraph 9 of the plan. This supervision necessarily implies the power of the court to scrutinize any payments made by the attorney to non-participating creditors or to anyone else. If such payments impede the effective operation of the plan, the court has the power to make suitable orders and impose suitable sanctions, which is precisely what was done in the present case. 11 U.S.C. § 1058(2). If I were to hold otherwise, it would be within the attorney's power to divert the debtor's earnings to non-participating creditors and to himself and others to such an extent that, even though the debtor had had enough money available or even paid in during the period of extension, at the end of the period he could still be substantially in debt. That is precisely the situation which had occurred here prior to the entry of the Referee's orders of June 13 and June 22.

The safest practice for a debtor's attorney to follow before making payments to non-participating creditors or others is for the attorney to seek leave of court, explaining the nature of the claim or expense being serviced and the effect of the payment on the operation of the plan. However, prior approval of court should not be required in all instances. Cf., *Seedman v. Friedman*, 132 F.2d 290, 294 (2d Cir. 1942) (Chapter XI). For example, a payment may be so small, so sensible, or so obviously not detrimental to the carrying out of the plan, that it would be a waste of time and effort for all parties concerned if leave of court were required. Also, some sudden emergency might occur which would make it impracticable to apply for leave of court. It should be realized by debtors, attorneys, and creditors, nevertheless, that the court always retains supervisory powers, and that even *after* outside payments have been made, the court may exercise these powers.

Having suggested these approaches to be followed by debtors' attorneys, and having attempted to make clear the continuing scope of judicial jurisdiction in Chapter XIII cases, I conclude that petitioner had authority to channel payments to the trustee, outside creditors, and others, but that this authority was always subject to court supervision. Petitioner did not have authority to deal with payments intended for the trustee independently of the Referee's supervision and he was properly called to account for the failure to pay to the trustee all the amounts required by the plan.

The order of June 22 was not as well phrased as one could wish, for it broadly concluded that the debtor's attorney had *no* authority to direct the debtor to make payments under the plan through the attorney. The attorney did have such authority, although if the word "direct" was used to mean that the attorney was in some way exerting pressure on the debtor to pay him involuntarily, then clearly the attorney could not have had authority for that. Assuming that the payments were voluntarily made to the attorney, there was nothing inherently improper in this and the Referee's conclusion regarding it was too broad. The Referee's overly broad statement with regard to the limits on the attorney's authority was not a necessary basis for the order of repayment, however, so the

broad language is not a basis for over-turning the order.

■ As to the Referee's separately stated conclusion that the attorney was without authority to pay outside secured creditors or make other payments on the debtor's behalf, this also is too broad, as I have indicated, but does not necessitate reversal of the order. The direction to repay the $4 appearance fee clearly was within the Referee's supervisory powers under the circumstances of this case. These powers may always be exercised when the Referee finds that the debtor, through his attorney or otherwise, has made improper, outside disbursements of earnings to the detriment of the plan. In all Chapter XIII proceedings it should be remembered that

> "nothing short of the utmost urgency should be considered an excuse for failure to service the plan according to its terms, because if a debtor gets into the habit of treating his Chapter XIII trustee as just another of his creditors, it is obvious he should not have sought the benefits of Chapter XIII * * *." Hilliard and Hurt, "Wage Earner Plans under Chapter XIII," 19 Business Lawyer 270, 287 (1963).

Clearly the debtor's attorney should not make it easier for the wage earner to "forget" that consummation of the plan is the most important immediate step he can take toward solving his financial problems.

■ Turning to the second question presented here, the right of petitioner to collect directly from the debtor without court order the unpaid balance of the court-approved attorney's fee, it is evident to me that petitioner had no such right. The order of September 30, 1963 which approved the fee of $300 expressly said that no part of the unpaid balance was to be paid out of the debtor's estate other than by the further order of the court. Petitioner himself drew that order and certainly was aware of what it provided. This was a proper order, consistent with the Referee's jurisdiction over the debtor's property, §§ 1011, 1058, with the specific provision on attorney's fees, § 1059(4), and with the court's general power to make appropriate orders to effectuate the plan, § 1058(2).

Petitioner attempts to argue that because the amount of $300 was originally agreed upon privately between debtor and petitioner, and because somehow the fee was to be paid "out of funds other than those required to fulfill his obligation under the plan," therefore the order did not mean what it said when it plainly stated that none of the unpaid balance of $225 was to be paid unless there was a further order of court. Clearly the private agreement between the petitioner and debtor did not supersede the Referee's order. Thus the order of June 22 was completely proper in finding petitioner without authority to collect the $225, and the order on petitioner to repay this amount to the trustee also must be upheld.

Turning to the third question at issue —petitioner's authority, independent of court supervision, to collect additional attorney's fees from the debtor for services rendered subsequent to confirmation in connection with the plan—the relevant statutory section on attorney's fees must be examined first:

> "In advance of distribution to creditors, there shall first be paid in full, out of the moneys paid in by or for the debtor, and the order of payment shall be—
>
> (4) such reasonable fee to the attorney for the debtor as the court may allow for the professional services actually rendered by such attorney to the debtor in and in connection with the proceedings under this chapter * *." 11 U.S.C. § 1059(4).

It is fairly clear that this provision refers to the court approved fee of $300 which I have already discussed. There is some uncertainty evident in commentaries on Chapter XIII as to whether only one attorney's fee is allowable for legal assistance rendered the debtor, or whether one fee is allowable for services

prior to confirmation and later fees are justifiable for services in connection with the consummation of the plan over succeeding years. See Hilliard and Hurt, "Wage Earner Plans under Chapter XIII of the Bankruptcy Act," 19 Business Lawyer 270, 282 (1963). The statutory provision above is somewhat unclear but it does seem to consider the fee as being for services already performed, and therefore does not preclude a later fee. Also, the Referee's order in the present case which awarded the original $300 fee is based upon petitioner's verified petition which specified approximately 15 hours of legal services performed. It thus is evident that the Referee's award of fees was made for services already performed and was not directed toward legal services not yet rendered. Consequently it may be the case that petitioner is entitled to reasonable, additional compensation for services rendered to the debtor after confirmation of the plan.

 Almost all of my earlier analysis with regard to petitioner's authority to make payments to outside creditors and for other expenses is applicable to the present question. Inasmuch as the Referee retained jurisdiction over all of the debtor's earnings for the purposes of the plan, any diversion of his earnings to petitioner for attorney's fees which was detrimental to the fulfillment of the plan was subject to the Referee's supervision. It is clear to me that the Referee had good reason to consider the $440 taken by petitioner as just such a diversion. Consequently the order of June 13 which required the payment of the $440 to the trustee, and the order of June 22 which concluded that petitioner was without authority to collect these additional fees, must be upheld.

The procedure I would suggest to avoid problems of this sort in the future is basically that which was incorporated in the original order for attorney's fees: No additional fees for services rendered after confirmation should be awarded except on proper application to the court. The attorney should show that services have been or are being rendered which are not fairly compensated for by the original award of fees. As to these additional fees, I believe the rule should be stricter than that which I suggested regarding payments through the debtor's attorney for non-participating creditors or other sources of expense for the debtor. There I said it was advisable but not essential in all instances to seek prior leave of court.

██ I have no reservation in stating that leave of court should always be secured before *any* additional fees are charged by an attorney for services rendered to the debtor which have any connection with the Chapter XIII proceedings. This would include the type of services rendered in this case in the collection of money from the debtor to pay non-participating creditors.

If an attorney is to be permitted to secure a double payment of fees in a situation such as this, one authorized by the Referee, and the other by private arrangement with a harassed debtor, no Chapter XIII plan would be safe. The principal beneficiaries of Chapter XIII proceedings should be the debtor and his creditors—not attorneys who act as collection agents.

It is not for me to decide at this time whether petitioner is entitled to any additional compensation or even to a future payment of the balance of his original fee. These remain as matters subject to the Referee's supervisory discretion in the particular circumstances of this case.

Finally, the possibility may be mentioned that a one-fee system could be worked out for future Chapter XIII cases, perhaps based on factors such as a formula relating the attorney's total fee to the size of the anticipated or actual claims of creditors. This could be arranged so that the award would be made upon confirmation, but payment of the fees would be in subsequent installments. One effect of this might be "to inspire a more definite and continuing interest on the part of the attorney in the successful completion of the plan."

Hilliard and Hurt, supra. Any arrangement of this sort, however, is more appropriately a matter for expert administrative arrangement to be worked out by appropriate judicial and bankruptcy officials, rather than for declaration by the decision of a single judge. Accordingly, I think it is sufficient for the present to suggest that good practice in future cases should be on the basis of a requirement of prior allowance and approval of attorney's fees.

For the above reasons, the Referee's order of June 22, amending the order of June 13, must be affirmed. An order to that effect has been entered today.