MANHATTAN SHIRT Co., Plaintiff, *v.* ROSINA CISTERNINO, Defendant.

City Court of the City of New York, Trial Term, New York County, May 14, 1945.

*Nathaniel T. Helman* for plaintiff.

*Horace G. Marks* for defendant.

COLEMAN, J. The plaintiff sues as assignee of a mesne tenant to recover from a landlord after the expiration of a leasehold the amount deposited by the original tenant as security for the performance of the terms of the lease. The first defense is based on the fact that the landlord had not consented to the assignment of the security deposit and that the lease provided that " the lessee shall not assign, transfer or set over this lease, or any part thereof * * * without the consent of the lessor first having been obtained in writing." But this provision is inapplicable. The assignment is not of an interest in the leasehold but of a claim to money deposited — a personal claim; there is no reason why the claim could not be assigned independently of other interests under the lease and without the consent of the landlord. (*Riggs et al.* v. *Pursell et al.,* 66 N. Y. 193; *Wertheimer* v. *Mark,* 81 Misc. 137.)

The second defense requires a somewhat extended statement of facts. The original lease was entered into in 1923, to expire in February, 1944. In 1929, extensive repairs were made by the tenant with the consent of the landlord, and at that time there was a modification of the lease. By this modification the landlord reserved to itself the " right " to require the lessee, at the end of the term, to restore the premises to their original condition. In July, 1943, the landlord wrote the tenant as well as the plaintiff asking that the premises be restored. It would have cost about fifty-four hundred dollars to make the repairs.

They involved the tearing down of a balcony and mezzanine floor, reinstalling a staircase to apartments above the store, and other structural repairs. The tenant applied to the War Production Board for permission to make the repairs. The request was denied. No repairs were made and the term came to an end. Two months before the date of expiration the landlord leased the premises in their then condition to a new tenant for a term of five years, without reserving the right of entry. By the terms of the modification permitting the tenant to make the repairs, the premises were to be restored " within one month after the termination of this lease; time of such delivery being of the essence of this agreement; unless prevented by strikes, lockouts, labor disputes or other conditions beyond the control of the lessee."

Obviously, it is too late in the day for the defendant to take the position that the plaintiff's inability in wartime to obtain permission from the Government to make the repairs is of no moment to her and that the plaintiff must be held to the exact terms of the lessee's promise. (*Nitro P. Co.* v. *Agency of C. C. and F. Co.*, 233 N. Y. 294; *Mawhinney* v. *Millbrook Woolen Mills*, 231 N. Y. 290; *The Styria, Scopinich, Claimant,* v. *Morgan*, 186 U. S. 1; *Metropolitan Water Board* v. *Dick, Kerr & Company* [1917] 2 K. B. 1, affd. [1918] A. C. 119; cf. *U. S.* v. *White Dental Co.*, 274 U. S. 398.) But she does suggest that Government restrictions on the use of building materials are temporary in nature, that they will certainly be removed sometime in the future before or after the termination of the war, and consequently, that the plaintiff's obligation to restore is not discharged, but only suspended to become operative again once those restrictions are lifted. (*F. A. Tamplin Steamship Company, Limited,* v. *Anglo-Mexican Petroleum Products Company, Limited,* [1916] 2 A. C. 397; cf. *Metropolitan Water Board* v. *Dick, Kerr & Company,* [1917] 2 K. B. 1, affd. [1918] A. C. 119, *supra.*)

Whatever may be said of the force of such an argument, the defendant is in no position to suggest it, for by her own action she has made performance impossible for at least five years. By leasing the premises for that period of time in their present condition without any right of re-entry she has disabled herself and the plaintiff from restoring them, assuming the plaintiff could obtain materials and that its obligation to restore has not been suspended. Certainly the plaintiff cannot be expected to await the termination of the new lease before making repairs; it cannot be held " in suspense " for five years.

There is no reason to suppose that the defendant will have any difficulty reletting in the present condition at the end of the five-year period, and the argument in plaintiff's favor would be even stronger if the new lease had been for a longer period. In the informal discussion that followed the trial, the attorneys for both sides stated that the character of the neighborhood had changed from residential to business and that from the landlord's standpoint it would be uneconomical to restore the premises to their former condition. That at least suggests one reason more why the obligation of the tenant, suspended by the defendant's own conduct for at least five years, should be said to have come to an end immediately.

There will be judgment for the plaintiff for $833 with interest.